Case number 153942, Kenyatta Erkins versus Rick Chuvalas. Oral argument not to exceed 15 minutes per side. Mr. Mark Buccia for the appellate. Good morning. Good morning, Your Honor. Mark Buccia on behalf of Kenyatta Erkins. I would like to reserve just two minutes for rebuttal. Very well. Thank you, Your Honor. May it please the In this case, the state trial court admitted testimony of one witness by video conference in contravention of two of Mr. Erkins' fundamental constitutional rights. His right to confront his accusers in person and his right to a fair trial, but more specifically, his right not to be convicted based upon an unreliable identification made after a suggestive identification procedure was utilized by the state. Regarding the first point, the core of the confrontation clause is the right to stand in the presence of one's Before you turn to the law, can you fill in what is a bit of a black box on what actually occurred at that trial? You know, for example, did the parties or the court discuss the fact that there was videotaping? Did the court make any finding or statement about necessity? Did Erkins' trial counsel consent? Your Honor, the record is not clear about any of those points. There's no evidence on the record that his counsel consented to this. There's no explanation. There's no objection in the record, Your Honor. That's correct. There's no finding by the trial court of any sort of necessity for this testimony. It was really just a summary statement by the court that now we're going to go to the law library for this testimony. There's no explanation of why it was done. The only thing that can be gleaned from the record is that the witness was in Canada at the time, which certainly is not sufficient necessity to justify having this testimony. Also, this isn't even before us on a Certificate of Appealability, is it? It is not in the Certificate of Appealability, Your Honor. In our brief, we requested this court to treat the inclusion of this issue as a motion to expand the certificate, which this court has the power to do, and we'd ask the court to do that because this is a demonstration of the denial of a substantial Why isn't there a procedural default? Well, Your Honor, if there's a procedural default, I think there's two different issues here. One is the Certificate of Appealability itself, which I think this court has the power to expand. The second is the issue of procedural default, which we do address in our brief that we believe there is cause and prejudice that justifies the procedural default. The cause being ineffective assistance of counsel in the state court. There's no strategic reason why counsel in the state court would not object to this testimony, especially considering the second problem, which is prejudice. There's no evidence in the record whatsoever, other than this single witness's testimony, to support Mr. Erkin's conviction on this count. And so we think there is cause and prejudice. What about all of the circumstantial evidence? The MO? I understand that there's not video or videotaped information or calls about this, but isn't this within the MO of what was done in a whole series of robberies? And how does that circumstantial evidence, would that be from, is it Weisbrod? Weisbrod, Your Honor. Weisbrod. Such that you have a problem with prejudice. No, Your Honor. I don't think that the other instances that there was evidence presented at trial would be sufficient for a reasonable juror to find Mr. Erkin's guilty beyond a reasonable doubt on this count. Without this testimony. At trial, Erkin's girlfriend, ex-girlfriend Amy Hoover testified that she, Erkin's, and the other committed the robbery, the first robbery, right? That's totally independent of Weisbrod testifying or not. I mean, there's an admission. Yeah, he did it. That's correct, Your Honor, but that's a different count. So there were two counts regarding Mr. Weisbrod. This guy was robbed twice. He was robbed twice, and so the testimony of Ms. Hoover only applies to the first count. With respect to the second count, the only testimony is from Mr. Weisbrod. There's some testimony from the police officer, but the police officer could not identify Mr. Erkin. So without the... So what you have, but you then have circumstantially the first robbery. The fact that they know where his home is, that they've robbed him in the past, and that it followed their M.O. in the way robberies have been committed, a number of robberies have been committed. What is, tell me why that's not enough to prevent a showing of prejudice? Well, Your Honor, I don't think we can infer from the fact that maybe a jury had enough evidence to find him guilty on one count to find him guilty on another. I don't think that that's sufficient. I don't think that the fact that he committed one robbery, whenever that may have, I can't recall the exact timing, but let's say several months before, is sufficient proof upon which a reasonable jury could rely in finding him guilty of a completely separate robbery, despite the fact that this may have fit some pattern that, according to law enforcement. So I don't think that that is sufficient. Without Mr. Weisbrod's testimony, Mr. Erkins could not have been found guilty on this count. There is no other reason to testify by video. It's a clear violation of the Confrontation Clause. The Supreme Court has held in Maryland v. Craig that the right to physical confrontation in person, physically, is fundamental. That's the core of the guarantee, and it can only be... It could be waived, right? And the right to have testimony live can be waived? It could be waived, Your Honor. Or was it, in fact, waived? Was it, by not objecting? Well, Your Honor, I would not say that it was waived. It certainly, I would not call it a... I would not go so far as to say a waiver. A procedural default, I think, is perhaps slightly different. A waiver would be a knowing relinquishment. All right. It was forfeited. It was forfeited, which means that now we're in cause and prejudice standards. So... It's a clear constitutional right, but you can, you know, you can decide not to enforce your clear constitutional rights. That's all. And here, that appears to be the decision. I don't... I mean, we don't have a record, Your Honor. And so... But I think that the standard to be applied in the case of procedural default would be cause and prejudice. And our position is that there's cause because there's no strategic reason that counsel will not have objected to this testimony. I could conceive of no reason why the only witness who could place Mr. Erkins, with respect to this count, why there would be no objection to his testimony by video when it's clearly inadmissible for him to do so. On Maryland versus Craig would require a finding of necessity, which as Judge Strange asked about earlier, was not found on the record. And therefore, this was a violation of the Confrontation Clause. And the court should reverse or vacate that conviction on that basis. But not only was the testimony by video, there also was this identification. This is an issue that was preserved throughout these proceedings. This unreliable identification by Mr. Weisbrod made during trial. The suggested identification procedure was the prosecutor, two weeks before trial, met with Mr. Weisbrod, showed him a single photograph of Mr. Erkins and said, this is the guy on trial for robbing you. Now, that is a suggestive identification procedure under several cases that we've cited in our brief. Showing a single photo is prototypical, impermissibly suggestive identification procedure. So, then we move to the second prong under Neal versus Biggers, which is the factors in whether this testimony was nonetheless reliable. And our view is that it's not. Several of the factors, especially the length of time between the incident and the identification at trial, which was 13 months, is significant, is very significant and has been found to be enough that it weighs against reliability. How does it match, though, the facts of this case? Because as I understand it, Mr. Weisbrod recognized these, your client and the other co-defendant about six months after the second robbery from a news report where their photos were seen. And he said, hey, that's my guys. Now, where did that come from? Your Honor, that news report was not mentioned until trial. Mr. Weisbrod did not go to the police after he saw the news report and tell them, I saw the guy, that's the guy. There was no identification made by Mr. Weisbrod for 13 months, none from the time, excuse me, from the time that the incident occurred until the time of trial. There was no identification made. And in fact, that only occurred after, excuse me again, after the prosecutor showed him the single photograph of Mr. Erkins. Now, the fact that there was this news report six months prior only actually lends further credence to our argument that the identification was unreliable. It's highly likely that Mr. Weisbrod looked at the single photograph from the prosecutor and in his mind had the more recent event, which was this news report that he saw. He had this news report in his mind and that's what he was thinking of, not the incident. The news report was before the photo was shown to him. The photo was shown to him only two weeks before trial. Yes, Your Honor. I'm sorry if I wasn't clear about this. But the, so the photo was shown to him six months prior to this concept of unconscious transference where he sees this photo in the news report, then later sees the same photo when the prosecutor shows it to him and says that must be the guy. That wasn't the sequence, though. I mean, one, he tells the police officers right after the second robbery, hey, if I see these, I'll recognize them because I got a good look at them. The lighting was good. Their faces weren't covered. And then he sees the news report six months later and says, oh, those are the guys. He does tell the police that he probably would be able to identify them. But in doing so, he doesn't give a very detailed description, much unlike the witness in the Niels v. Biggers case where there was a specific description of the features of the defendants or the perpetrators. Let's assume we agree with you at that point on the, that we say it's unnecessarily suggestive and didn't apply the Biggers factors. And if we applied the Biggers factors, we would find this. But we're in Ed Polan. Why is the decision of that court objectively unreasonable under EDPA? Couldn't a court, couldn't someone disagree with you and not be objectively unreasonable on making that determination? They certainly could, Your Honor. I would say that the district court applied the factors incorrectly. In fact, at least one of the factors, the court, I believe it was the, this initial description idea to the district court said that the, the district court said that this went to the weight of the evidence, not the admissibility of it, which is, which is just incorrect under Biggers. The Biggers factors have to be applied in order to determine admissibility in the first instance and not to go to weight. So I think the district court misapplied the factors and this court in applying the factors should note that the, Yeah, but I think, I don't know if you directly answered Judge Stranch's point. I mean, her point is that, yeah, maybe the trial court, you know, the state court was wrong, but that doesn't mean we can reverse under EDPA. It has to be not just wrong, but it has to be an unreasonable decision. And what makes it unreasonable? I think it was unreasonable because the court applied, the court misapplied the standard. The court said that this standard determined, goes to weight, not to admissibility, and that's incorrect. And so I think that's the, that is why it was unreasonable, Your Honor. In misapplying the standard, the court demonstrates it was unreasonable and that's why this court should reverse. Didn't the state court find that it was not unnecessarily suggestive, which would have pre-terminated other discussions? So are we looking at both prongs of that or are we looking at the unnecessarily suggestive in the circumstances wouldn't have led to a misidentification? Is that objectively unreasonable under EDPA? I believe it is objectively unreasonable, Your Honor. In fact, there's several cases, and I don't recall the exact names of them now, but I know they're cited in our brief, where a single photo shown to a witness is objectively impermissibly suggestive. And I think that applying that, saying that, showing this photo by the prosecutor as well, which most of these cases involve police, and I think the prosecutor actually, it's even more suggestive, I think that that demonstrates that this is unreasonable and it was impermissibly suggestive. So I think under both prongs, it's first impermissibly suggestive procedure utilized by the prosecutor, and then the second prong, it's an unreasonable, or excuse me, unreliable identification by the witness, considering all the factors in Biggers. And I see that my time That prejudice analysis, that EDPA type analysis, comes in at two spots, right? It comes in on the issue itself, and then it is reiterated, so to speak, in the procedural default analysis. We're talking about the procedural default with respect to the first issue, the confrontation issue, Your Honor. I think that that issue was procedurally defaulted, but we're talking there about cause and prejudice. And with respect to the analysis you're talking about on the identification issue, it comes into play with respect to both prongs. Both. Both prongs. But it comes, then it comes into play at that spot on both prongs, and then it comes back into play at the overcoming the procedural default. I think the analysis is slightly different, but yes, Your Honor. I know, I understand, I think what your point is, and yes. Both spots. Yes, Your Honor. All right, thank you. Anything further? Thank you, Your Honor. Good morning. Good morning, Your Honors. My name is Scott Criss. I'm here on behalf of the Attorney General of Ohio representing the warden. First, as to the confrontation clause issue, the confrontation issue, as Judge Gilman pointed out, there was no COA on that issue. There couldn't have been a COA on that issue because it was not raised below. So in addition to not being able to address this claim because there's no certificate of appealability granted, this court doesn't address issues that were not raised below either in any case, much less a habeas case that requires a certificate of appealability. More than that, it wasn't raised in the state court. And so at the very least, it's procedurally defaulted. The appellant has posited ineffective assistance of counsel as cause for that. But of course, that claim was never raised. And so you cannot raise a procedurally defaulted ineffective assistance claim as cause for a procedurally defaulted claim. So for any number of reasons, the confrontation issue that first reared its head in their brief should not be considered by this court. And help me understand structurally how you would step through that analysis. Would you not engage in the failure of the trial counsel to raise it, the failure of appellate counsel to raise it, cause and prejudice for that, applying epidefference, and then you would turn around on the procedural default and walk through the same thing? Educate me if that is an incorrect way to walk through this analysis. I'm sorry, if I understand your question, if it had been raised in the petition? Well, there is a petition before us to expand the COA. Right. So walk briefly through how that could be analyzed for a grant of an expanded COA and why you think that is not applicable here. Well, first, I would argue that it was not raised in the petition filed in the district court. And so it can't be considered by this court on appeal. Next, I would argue that it was procedurally defaulted because it was never raised in the state courts. And so I would consider it as a freestanding claim first, this confrontation claim. Was it raised in the state courts? No, it was procedurally defaulted because it was not raised on appeal. If it had been raised on appeal, it would have been procedurally defaulted because of the contemporaneous objection rule, because it was never objected to at trial. That's another procedural default. So once you get to that point, then I would say, well, what's the cause and prejudice? Well, the cause would have been ineffective assistance of counsel, theoretically. But that claim was never raised in the trial court. And so that's Edwards v. Carpenter, I think, that says that any claim that's raised as cause for another procedurally defaulted claim has to itself be properly preserved, which it wasn't. So that's where I would go on that analysis. Okay, thank you. But not that I want to address the claim because it is so procedurally defaulted, but I think it's obvious from the record that it was a stipulation among counsel that they would do the testimony this way, and trial counsel had no problem. Where is the stipulation on the record? I couldn't find one. I don't know if there was a pretrial motion. I couldn't find a pretrial motion or if it was discussed in chambers without a reporter present. I don't know. But the first that it was mentioned was when the prior witness got done testifying, he asked to observe the rest of the trial. And the judge said, well, sure, you can observe the rest of the trial, except for the next witness that we're going to the law library for two-way video conferencing. There was never an objection raised. So it seems obvious from the record, or it can be assumed from the record, that it was assented to by the defendant. And I think if you look at the trial record, they had no problem lodging objections to any number of things. If they had wanted to lodge an objection, even a continuing objection to something that was discussed in chambers earlier, they would have put it on the record clearly. As to the identification procedure, the first identification by Mr. Weisbrod was done when he was in Las Vegas, and a friend of his sent him a link to look like a, what appears to be in the record, he sent him a link to a news article online about the arrest of these three folks. So the first identification that he made was not a state action. But he did, I understand that, but they didn't, he did not go to the police and say, oh, you found my guy. I mean, your opposing counsel makes a fair point. Right. He did not. Sure. So to the prosecutor who shows him the picture, that's, the question is, is that unduly suggestive to have done so without regard to other things that that prosecutor doesn't even know about? I don't, I just don't see how that's unduly suggestive. He's already seen the pictures. Well, showing a single picture to a witness, there's a fair amount of case law that says that that's unnecessarily suggestive. I think in the context of this case, I don't think there's any indicia of suggestiveness, where he has already seen the pictures and voluntarily said. But he didn't voluntarily say that before the prosecutor showed it to him. He did. I'm sorry. He did. When he returned from Las Vegas, it's true that he did not make a call and say, hey, I saw this news article. These are the guys. But when he returned from Las Vegas to Cincinnati, he was contacted by detectives who he told, yeah, I saw the news article. Those were the guys that robbed me. He volunteered that to, he wasn't shown the pictures again, but he did volunteer. Can you at some point point where that is in the record to us, please? It's in the testimony of Detective Ingram, I believe. Or it might be in his testimony. At any rate, he identified these folks from the news report, came back to Cincinnati. He was contacted by the detectives. Yes, those are the folks who did it. And his identification was actually bolstered by Amy Hoover, who testified, because he said, yeah, I recognize Amy Hoover because she was the woman who showed up at my door prior to the first robbery. And Amy Hoover, in fact, testified that, yeah, that was me. I showed up at the door and that was me who was in the building when he was robbed. So that is at least one indicia of reliability of his identification, that it was confirmed by one of the defendants that she was actually involved and he correctly identified her. Yeah. First robbery. In the first robbery. Not the second. Correct. Correct. But she identified her co-defendants in the first robbery saying, yeah, they were with me and they were who carried out the robbery with me. Well, if you could just follow up with a citation to the record, I'd appreciate it. I certainly can. Thank you. I will try to. What about, I had a question about count 22, the theft defense. Yes. My understanding of the decision below is that the court assumed that there was a gun for count 22 for the complicity to rob Boger. Boger, is that the correct pronunciation? And did not reference the fact that the statute required both a theft defense plus either a deadly weapon, harm, or force. Well, we know Boger was never robbed, so it's not harm or force. I'm not seeing where there was any proof in the record for count 22 that the theft defense alleged was accompanied by a deadly weapon. I'm sorry, I'm not prepared to speak on that. I wasn't aware that that was part of the certificate of availability. Well, it's not. I didn't investigate the other defendants very closely, to be honest, in preparing, so I apologize. I'm not 100% clear on the evidence with respect to the other defendants. Would it make any difference to his sentence here? He was convicted on, what, two different robberies and two or three different attempted robberies. If one count is defective about this, Mr. Boger, because it wasn't raised by defense counsel, even to ask for a COA. I just was curious, maybe it wouldn't have made any difference in his sentence. Yeah, perhaps you could ask defense counsel on that issue because I know several counts were consecutive, several were concurrent, and I didn't do the calculations to figure out if we lost a charge here and there, which one would affect the length of the sentence. It's certainly possible, but he had 31 years. I don't think that it would make a significant difference, even if one charge went away. I believe on page, let's see, page ID 913, where he was asked, I think this is cross He did not contact him when he was in Las Vegas. He didn't make a phone call. He says, when I returned home, I remember the office, several officers had stopped by, or at least Detective Kinney had stopped by. And he said, did any one of those officers share a photograph at that time? And he said, no, he didn't. The next time he saw a photograph was in trial prep with the prosecutor. Is that the place in the deposition where he says, and then I told him that I saw him on the news report? Yes. It's in Weisbrod's testimony on page 913, 929, 16. Thank you. Unless there are any other questions. Thank you. Just very briefly, Your Honor. First, Judge Gilman, you mentioned something about the sentencing. Counts 22, 28, and 29, the sentence was three years concurrent on the three of them. And with respect to count 11, which is the other count we've been talking about, the sentence was five years. So we're talking about a total of eight years for all the counts in our brief. I mean, you didn't even raise the count 22 problem of maybe no firearm. We did not raise that issue that Judge Strange raised. No, we raised a different issue in our brief regarding counts 22, 28, and 29. You did not raise it. It probably wouldn't affect the sentence, even if count 22 were defective. Possibly not, Your Honor, because it was three years concurrent on the three counts. Just one thing about the confrontation clause issue. I don't think it is that this court can assume from the record that there was a stipulation. There's no stipulation in the record to this video testimony. So I don't think that the court can rely upon evidence that's not there. I don't think that can be inferred by anything in the record. There's no evidence that that defense stipulated to this beyond... All we know is that they raised no objection. That's correct, Your Honor. That's correct. Do you think if the record reflects that Mr. Weisbrod had said to Detective Kinney, I've seen these people on this news report, and those are the people that robbed me. Does that not impact the analysis of whether the showing by the prosecutor was unduly suggestive? I don't think it affects... Or reliability? I think that it may go to the second prong, Your Honor. To the first, I don't think that it does. I think that the procedure used by the prosecutor is unduly suggestive, regardless of whether that happened or not. I don't recall that happening, but certainly I know Your Honor is going to look at the record. But I think it could affect the reliability analysis. But I would still say that even at that point, six or seven months after the robbery, that's still sufficient enough time that the length of time would call into question the reliability of the identification. Further Judge Gilman. All right. Counsel, I noticed that you have taken the case pursuant to an assignment by the Criminal Justice Act. And we want to thank you for taking this case and representing your client well. And thank you for your service. Thank you, Your Honor. It's my pleasure. Thank you. All right. With that, I may adjourn the court.